UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARCO ANTONIO B.R. (A# 061-488-365),[1]

Petitioner,

v.

WARDEN OF GOLDEN STATE ANNEX DETENTION FACILITY,

Respondent.

No. 1:26-cv-00810-TLN-CSK

**ORDER**

This matter is before the Court on Petitioner Marco B.R.'s ("Petitioner") *pro se* request for injunctive relief (ECF No. 1), which the Court construed as a motion for temporary restraining order ("TRO") (ECF No. 7.)  Respondent filed an opposition and motion to dismiss.  (ECF No. 9.)  Petitioner filed a reply.[2]  (ECF No. 13.)  For the reasons set forth below, the Court GRANTS in part Petitioner's request for injunctive relief.

---

[1]    As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information.  *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2]    The Court appointed counsel for Petitioner (ECF No. 7 at 2), who has now appeared in the case and filed briefing on Petitioner's behalf (ECF Nos. 8, 13).

1

## I.    FACTUAL BACKGROUND

The instant action arises from Petitioner's allegedly unlawful detention.  (*See* ECF No. 1.) Petitioner was admitted to the United States in Los Angeles, California as a lawful permanent resident on August 10, 2010.  (ECF No. 9-1 at 2.)  On January 14, 2020, Petitioner was convicted for a violation of California Penal Code § 288.5(a), continuous sexual abuse of a minor.  (ECF No. 9-2 at 1.)  Petitioner was sentenced and committed to the custody of the California Department of Corrections and Rehabilitation ("CDCR") for a term of 12 years.  (*Id.*)

Petitioner served a total of six years and seven months in CDCR custody.  (ECF No. 1 at 5.)  On October 26, 2025, CDCR notified immigration officials that Petitioner was granted a parole date of November 21, 2025.  (ECF No. 9-1 at 2.)  On November 21, 2025, Petitioner was released from CDCR custody and immediately taken into immigration custody where he was served with a Notice to Appear and Warrant for Arrest ("Notice").  (ECF No. 9 at 2; ECF No. 9-3.)  The Notice charged Petitioner as being removable from the United States as an aggravated felon under 8 U.S.C. § 237(a)(2)(A)(iii).  (ECF No. 9–3 at 1.)  Respondent maintains Petitioner is currently being held subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(B).  (ECF No. 9 at 1.)

On January 30, 2026, Petitioner filed a petition for writ of habeas corpus challenging the lawfulness of his ongoing detention and seeking injunctive relief in the form of immediate release or a bond hearing in the alternative.  (ECF No. 1 at 2, 17.)  On February 10, 2026, Respondent filed a response to Petitioner's request for injunctive relief and a motion to dismiss.  (ECF No. 9.)  On February 27, 2026, Petitioner filed a reply.  (ECF No. 13.)

## II.    STANDARD OF LAW

For a TRO, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d

1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

### III.   ANALYSIS

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

#### A.   Likelihood of Success on the Merits

Petitioner alleges that his prolonged detention without a hearing violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 17–18.) Respondent's sole argument in opposition to a TRO is that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c), a statutory authority that does not itself provide for a bond hearing. (ECF No. 8 at 2–4.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

i.      *Liberty Interest*

As for the first step, the Court finds Petitioner has established a protectable liberty interest.  A person who has been released from physical restraint gains a "liberty [interest that] is valuable and must be seen as within the protection of the" Due Process Clause.  *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).  "Even when a statute authorizes detention without a hearing, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute."  *Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG, 2025 WL 2381464, at *5 (E.D. Cal. Aug. 15, 2025) (citing *Morrissey*, 408 U.S. at 482; *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Young v. Harper*, 520 U.S. 143, 147–49 (1997)); *see also Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause").

Here, Petitioner has been a lawful permanent resident since August 10, 2010.  (*See* ECF No. 1 at 5; ECF No. 9-1 at 2.)  His liberty interest has been strengthened with time.  As this Court and numerous other courts have concluded, individuals who have been released from immigration custody have a protected liberty interest in remaining out of custody.  *See, e.g.*, *Acosta v. Warden of the Golden State Annex Detention Facility*, No. 1:26-cv-00530-TLN-EFB, 2026 WL 350831, at *3 (E.D. Cal. Feb. 9, 2026); *Singh v. Chestnut*, No. 1:26-cv-00546-DJC-AC, 2026 WL 266021, at *2 (E.D. Cal. Feb. 2, 2026) (citing cases).  Thus, the Court finds Petitioner has an established liberty interest in his continued freedom.

Respondent argues Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) because of his conviction for violation of California Penal Code § 288(a), sexual abuse of a minor.  (ECF No. 9 at 2.)  In reply, Petitioner asserts that due process requires an impartial adjudicator to decide if his continued detention is reasonably related to Government's interest in preventing flight and protecting the community from harm.  (ECF No. 13 at 4–5.)

However, Petitioner's liberty interest is not defeated by statute.  Section 1226(c) of the Immigration and Nationality Act mandates detention of noncitizens who have been arrested,

charged, convicted, or sentenced of certain criminal offenses.  8 U.S.C. § 1226(c).  Respondent does not engage with Petitioner's particular factual circumstances, nor does Respondent engage with due process requirements.  (*See* ECF No. 9.)  Respondent only contends Petitioner's criminal conviction from 2020 is the source of the deprivation of his liberty today, under § 1226(c).  Despite Respondent's reliance on statutory authority, courts consistently find that detention without a bond hearing under § 1226(c) is unconstitutional, even for noncitizens with severe convictions.  *See, e.g.*, *Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (finding detention under § 1226(c) without a hearing violated due process where Petitioner lived in the community for five years after serving his sentence for murder); *Perera v. Jennings* (*Perera I*), No. 21-cv-04136-BLF, 2021 WL 2400981, at *3–6 (N.D. Cal. June 11, 2021) (same, after living at liberty for seven years post 50-month sentence for a controlled substance conviction); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *4–7 (N.D. Cal. Mar. 31, 2023) (same, six years of liberty post-sentence for sex crime).  Thus, the Court finds Respondent's assertions unavailing.

Accordingly, Petitioner has a strong liberty interest in his continued freedom from physical restraint protected by the Due Process Clause.  *See Zadvydas*, 533 U.S. at 690.  The Court next considers what process was owed to Petitioner before depriving him of his liberty.

ii.      *Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id*. at 333 (internal quotations omitted).  The Court finds these factors favor a bond hearing at minimum.

First, Petitioner has a substantial private interest in remaining free from detention, as discussed above.  Petitioner has established a life in the United States, as he notes his wife, his daughter, and the rest of his family are U.S. citizens.  (ECF No. 1 at 7.)  Thus, Petitioner's private interest has been impacted by his detention.  *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly); *Perera v. Jennings* (*Perera II*), 598 F. Supp. 3d 736, 745 (N.D. Cal. 2022) (quoting *Rajnish v. Jennings*, 2020 WL 7626414, at *6 (N.D. Cal. Dec. 22, 2020) ("Any length of detention implicates the same fundamental liberty interest in remaining free from imprisonment.") (cleaned up)).

Second, the risk of erroneous deprivation is considerable given Petitioner has likely not received any hearing, either pre- or post-detention.  "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community."  *Carballo*, 2025 WL 2381464, at *7 (citing *Zadvydas*, 533 U.S. at 690; *Padilla v. ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)).  It is not this Court's role to determine whether Petitioner is a danger or flight risk.  However, without a redetermination that Petitioner's detention is justified and weighing Petitioner's current circumstances before an immigration judge, the risk of erroneous deprivation is high.  *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community.").

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are negligible.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  "While the Government's interest in enforcing the nation's immigration laws is significant, that interest is not at stake here; instead, it is the much lower interest in detaining [Petitioner] pending removal without a bond hearing."  *Perera II*, 598 F. Supp. 3d at 746 (citing *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019)).  "Requiring the government to provide [Petitioner] with a bond hearing does not meaningfully undermine the government's interest in detaining non-citizens who pose a

danger to the community or are a flight risk." *Perera I*, 2021 WL 2400981, at *5. Here, there is no final order of removal for Petitioner. As discussed above, no neutral arbiter has found Petitioner to be a danger to society or a flight risk. Moreover, the cost and time of procedural safeguards are minimal here. Bond hearings are routine processes for Respondent and carry minimal burden.

On this record, the *Mathews* factors demonstrate that the Fifth Amendment Due Process Clause entitles Petitioner to a bond hearing, at a minimum. *See Carballo*, 2025 WL 2381464, at *8. Respondent has not provided such a hearing and are continuing to deny him one. Therefore, Respondent has denied Petitioner the "fundamental requirement of due process . . . the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews*, 424 U.S. at 333. Hence, Petitioner is likely to succeed on his claim that his detention without a bond hearing is unconstitutional.

### B.    Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of relief. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a decision on his immigration proceedings. Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, Petitioner has sufficiently established irreparable harm.

### C.    Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092

(9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."  *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights."  *Melendres*, 695 F.3d at 1002.  Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering."  *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).  Any burden imposed by requiring Respondent to comply with constitutionally required process is both *de minimis* and clearly outweighed by the substantial harm Petitioner will suffer if he continues to be detained without due process.  In sum, these last two factors weigh in Petitioner's favor.

**IV.   CONCLUSION**

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's request for injunctive relief (ECF No. 1) is GRANTED in part:

   a. Respondent is ENJOINED and RESTRAINED from continuing to detain Petitioner for more than **seven days** from the date of this Order without a bond hearing before a neutral fact-finder at which Respondent bears the burden to justify Petitioner's detention by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  *See Perera I*, 2021 WL 2400981, at *6 (explaining basis for burden).  The fact-finder must also consider Petitioner's financial circumstances for bond and alternative conditions of release.  *See Hernandez*, 872 F.3d at 991.  At any such hearing, Petitioner shall be allowed to have counsel present.  If Petitioner is not found to be a danger to society or flight risk, Respondent must immediately release Petitioner.  Respondent may impose any restrictions or conditions determined to be necessary by the neutral fact-finder at the hearing;

   b. Within **eight days** from the date of this Order, Respondent must file a notice of

compliance with this Court's Order and, if a bond hearing was held, identify the outcome of the hearing;

    c.  If Petitioner is released, Respondent is further ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where Respondent shows material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future. At any such hearing, Petitioner shall be allowed to have counsel present;

2. Respondent is ORDERED TO SHOW CAUSE why the Court should not grant Petitioner's habeas petition and enter judgment in favor of Petitioner. Respondent shall file responsive papers within **eight days** from the date of this Order. Failure to timely file an answer/return will be construed as a non-opposition under E.D. Cal. L.R. 230(c). Petitioner may file a reply within **twelve days** from the date of this Order. The parties shall indicate in their briefing whether they request a hearing. The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule; and

3. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

IT IS SO ORDERED.

Date: April 21, 2026

_____

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE