UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO ANTONIO B.R.,[1] <br><br> Petitioner, <br><br> v. <br><br> WARDEN OF GOLDEN STATE ANNEX DETENTION FACILITY, <br><br> Respondent. | No. 1:26-cv-00810-TLN-CSK <br><br> (A# 061-488-365) <br><br> **ORDER** |

This matter is before the Court on Petitioner Marco B.R.'s Petition for Writ of Habeas Corpus (ECF No. 1) and Motion to Enforce the Temporary Restraining Order ("TRO") (ECF No. 20). For the reasons set forth below, the Court GRANTS both Petitioner's habeas petition and motion.

///

///

///

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The Court need not recite the full factual and procedural background herein, as it is set forth fully in the Court's April 22, 2026 Order granting in part Petitioner's request for injunctive relief, which the Court construed as a motion for TRO.  (ECF No. 7 at 1; ECF No. 16.)  In the April 22, 2026 Order, the Court enjoined and restrained Respondent from continuing to detain Petitioner for more than seven days without a bond hearing before a neutral fact-finder at which Respondent bears the burden to justify Petitioner's detention by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  (ECF No. 16 at 8.)  The Court also ordered Respondent to show cause why the Court should not grant Petitioner's habeas petition and enter judgment in favor of Petition.  (*Id.* at 9.)

On April 27, 2026, Respondent filed a notice of bond hearing, notifying the Court that a bond hearing was held before Immigration Judge ("IJ") Ravit Halperin on April 27, 2026, and attaching the IJ order denying bond.  (ECF Nos. 18, 18-1.)  On April 29, 2026, Respondent filed a response to the order to show cause.  (ECF No. 19.)  On May 1, 2026, Petitioner filed a reply, challenging the IJ's bond hearing as failing to comply with due process and lacking fundamental fairness.  (ECF No. 20.)  The Court construes this brief as a motion to enforce the TRO. Accordingly, the Court will first evaluate Petitioner's motion to enforce the TRO and then consider the habeas petition on its merits.

## II.    MOTION TO ENFORCE THE TRO

### A.    Standard of Law

Federal courts have inherent authority to enforce their own orders, including those granting injunctive relief in habeas actions.  *See Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011) ("[T]he district court ha[s] authority to review compliance with its earlier order conditionally granting habeas relief.").  A motion to enforce judgment is the "usual method" for requesting a court interpret its own judgment and compel compliance.  *California by & through Becerra v. Dep't of the Interior*, No. C 17-5948 SBA, 2020 WL 13093994, at *3 (N.D. Cal. July 30, 2020) (citing *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004)).  If petitioner has received all relief required by the court's prior judgment, the motion to enforce

2

should be denied. *Heartland Hosp.*, 328 F. Supp. 2d at 11. But if petitioner demonstrates that respondent "has not complied with a judgment entered against it, even if the noncompliance was due to misinterpretation of the judgment," the motion shall be granted. *Id.* To prevail on a motion to enforce an injunction, "[t]he moving party has the burden of showing by clear and convincing evidence that the enjoined party violated a 'specific and definite order of the court.'" *Kia Am., Inc. v. Rally Auto Grp., Inc.*, No. 8:22-CV-00109-JVS-JDE, 2022 WL 17185011, at *2 (C.D. Cal. Oct. 20, 2022) (quoting *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999)).

As constitutional challenges to IJ detention determinations present mixed questions of fact and law, the appropriate standard of review is "abuse of discretion." *Martinez v. Clark*, 124 F.4th 775, 783–84 (9th Cir. 2024). However, "due process claims and questions of law raised in immigration proceedings" are reviewed de novo. *See Singh v. Holder*, 638 F.3d 1196, 1202–03 (9th Cir. 2011). Under an abuse of discretion standard, the court does not reweigh evidence but instead considers whether the IJ "applied the correct legal standard." *Id.* (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). In other words, "[i]n reviewing the IJ's determination, a district court may not second guess the IJ's weighing of the evidence. Instead, its review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" *Quan v. Barr*, No. 20-CV-08118-LB, 2021 WL 308610, at *4 (N.D. Cal. Jan. 29, 2021) (quoting *Hilario Pankim v. Barr*, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020)).

B.      Analysis

Petitioner argues the immigration court bond proceeding did not comply with due process because the IJ failed to make individualized findings establishing by clear and convincing evidence that Petitioner poses a danger to the public if he were to be released from detention. (ECF No. 20 at 6–7.) Petitioner maintains the IJ did not consider Petitioner's institutional history while incarcerated, his family and community ties, his employment prospects, nor did the IJ inquire as to his release plan. (*Id.* at 7.) Petitioner also emphasizes the IJ did not explain her reasoning as to why Petitioner's criminal history alone necessitated the conclusion that he was a

3

danger to the public.[2] (*Id.* at 9.)

Here, the Court finds upon review of the unofficial transcript of the bond hearing (*see* ECF No. 20-1) that it is plainly evident the IJ failed to comply with the Court's TRO.  No attorney for Respondent ever appears in this transcript.  It appears to be only a back and forth between Petitioner and the IJ.  It would therefore be impossible for Respondent to establish at this hearing by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  The IJ's decision therefore "reflects clear legal error [and] is unsupported by sufficient evidence."[3] *Quan*, 2021 WL 308610, at *4.  Because this abuse of discretion amounts to a deprivation of Petitioner's right to due process at the bond hearing, the Court GRANTS Petitioner's motion to enforce the TRO.

### III.    PETITION FOR WRIT OF HABEAS CORPUS

#### A.    Standard of Law

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art I, § 9, cl. 2).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas

---

[2]    Even though Petitioner does not provide information on whether he has appealed the IJ's decision, the Court nevertheless finds after consideration of the factors articulated in *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007), that prudential exhaustion is not required.  First, an administrative appellate record is not necessary to reach a proper decision on Petitioner's due process claim.  Second, any risk of deliberate bypass of administrative procedures is reduced by the fact that district courts will only have jurisdiction in the "rare case[s]" where future petitioners allege a "colorable" constitutional or legal challenge to the government's procedures. *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017) (citing *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1271 (9th Cir. 1991)).  Finally, it is unlikely the agency will correct its own mistake upon further review.

[3]    The Court orders Respondent to provide Petitioner with a second bond determination hearing.  Indeed, Petitioner is correct that IJs must "sufficiently explain their reasoning to permit appellate or judicial review of their decision" and provide "reasoned consideration to the evidence as a whole, [make] supportable findings, and adequately explain[] [their] reasoning."  (ECF No. 20 at 6 (quoting *Mayancela v. FCI Berlin, Warden*, No. 25-cv-348-LM-TSM, 2025 WL 3215638, at *6 (D.N.H. Nov. 18, 2025); *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023)).)

corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

B.    Analysis

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.  (ECF No. 1 at 17–18.)  In opposition, Respondent contends Petitioner's detention is mandatory under 8 U.S.C. § 1226(c), as he was convicted of continuous sexual abuse of a minor under California Penal Code § 288.5(a).  (ECF No. 8 at 2–4; ECF No. 19 at 2.)  Respondent also argues in the alternative that the habeas petition should be dismissed as moot because Petitioner received a bond hearing pursuant to the Court's order and bond was denied based on the IJ's finding that Petitioner is a danger.  (ECF No. 19 at 8.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

i.    *Liberty Interest*

As for the first step, the Court finds Petitioner has established a protectable liberty interest.  A person who has been released from physical restraint gains a "liberty [interest that] is

5

valuable and must be seen as within the protection of the" Due Process Clause. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). "Even when a statute authorizes detention without a hearing, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." *Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG, 2025 WL 2381464, at *5 (E.D. Cal. Aug. 15, 2025) (citing *Morrissey*, 408 U.S. at 482; *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Young v. Harper*, 520 U.S. 143, 147–49 (1997)); *see also Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause").

Respondent argues Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c) because of his conviction for violation of California Penal Code § 288(a), sexual abuse of a minor. (ECF No. 9 at 2; ECF No. 19 at 2–4.) Respondent maintains Petitioner minimized any liberty interest he may have had when he committed this crime and that this case is factually distinct from the other cases finding due process required a bond hearing for noncitizens detained under § 1226(c). (ECF No. 19 at 4–5.)

Here, this Court has already held that Petitioner's liberty interest is not defeated by statute. The Court understands Respondent's argument that Petitioner has not necessarily lived at "liberty" for any amount of time after having served his criminal sentence. (*Id.* at 5.) Nevertheless, while this means that perhaps his liberty interest has not been strengthened over time, it does not mean his liberty interest has been extinguished. The Court finds that Petitioner still retains a liberty interest because he was detained by ICE immediately upon release from criminal detention. These facts are aligned with *Morrissey*, which concerned the liberty of a parolee. 408 U.S. at 481–82. Like the parolee in *Morrissey*, Petitioner's liberty would "enable[ ] him to do a wide range of things open to persons who have never been convicted of any crime." *Id.* at 482. These include the opportunity to "be gainfully employed and [ ] free to be with family and friends[.]" *Id.* Petitioner has invested in his rehabilitation, taken parenting and domestic violence classes, committed to his education, has a job waiting for him should he be released. (ECF No. 1 at 5–7.) Finally, Petitioner has been a lawful permanent resident since August 10,

2010.  (*See id.* at 5; ECF No. 9-1 at 2.)  Although the liberty interest may be revoked, Petitioner still has a liberty interest protected by the Due Process Clause.  *See Zadvydas*, 533 U.S. at 690.  The Court next considers what process was owed to Petitioner before depriving him of his liberty.

ii.        *Procedures Required*

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id*. at 333 (internal quotations omitted).  The Court finds these factors favor a bond hearing at minimum.

First, Petitioner has a substantial private interest in remaining free from detention, as discussed above, that is unquestionably affected by Respondent's actions detaining him.  Petitioner has established a life in the United States, as he notes his wife, his daughter, and the rest of his family are U.S. citizens.  (ECF No. 1 at 7.)  Further, as an individual released after serving his criminal sentence, Petitioner has a profound interest in his return to liberty.  *See Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (concluding that re-incarcerating a parolee released from custody would be "inconsistent with fundamental principles of liberty and justice.").

Second, the risk of erroneous deprivation is considerable given that Petitioner's prior bond hearing did not comply with due process and the Court previously found that he had received no other process.  (ECF No. 16 at 6.)  It appears that Respondent did not even attend the hearing before the IJ to meet its burden to establish by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." *Carballo*, 2025 WL 2381464, at *7 (citing *Zadvydas*, 533 U.S. at 690; *Padilla v.*

7

*ICE*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023)).  It is not this Court's role to determine whether Petitioner is a danger or flight risk.  However, without a redetermination that Petitioner's detention is justified and weighing Petitioner's current circumstances before an immigration judge, the risk of erroneous deprivation is high.  *See R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community.").

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are negligible.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  "While the Government's interest in enforcing the nation's immigration laws is significant, that interest is not at stake here; instead, it is the much lower interest in detaining [Petitioner] pending removal without a bond hearing."  *Perera II*, 598 F. Supp. 3d at 746 (citing *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019)).  "Requiring the government to provide [Petitioner] with a bond hearing does not meaningfully undermine the government's interest in detaining non-citizens who pose a danger to the community or are a flight risk."  *Perera I*, 2021 WL 2400981, at *5.  Here, there is no final order of removal for Petitioner.  As discussed above, the first bond hearing Petitioner was provided did not comply with due process.  Moreover, the cost and time of procedural safeguards are minimal here.  Bond hearings are routine processes for Respondent and carry minimal burden.

On this record, the *Mathews* factors demonstrate that the Fifth Amendment Due Process Clause entitles Petitioner to a full and fair bond hearing that complies with due process.  *See Carballo*, 2025 WL 2381464, at *8.  Respondent has denied Petitioner the "fundamental requirement of due process . . . the opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews*, 424 U.S. at 333.  Therefore, Respondent violated the Fifth Amendment and Petitioner's procedural due process rights.

### IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS Petitioner's habeas petition (ECF No. 1) and GRANTS Petitioner's motion to enforce the TRO (ECF No. 20).  Respondent is ORDERED

to provide Petitioner with a second bond determination hearing, adhering to all constitutional requirements as interpreted by the Ninth Circuit and this Court.  It is HEREBY ORDERED as follows:

1. Respondent is ENJOINED and RESTRAINED from continuing to detain Petitioner for more than **seven days** from the date of this Order without a bond hearing before a neutral fact-finder at which Respondent bears the burden to justify Petitioner's detention by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  *See Perera v. Jennings*, No. 21-cv-04136-BLF, 2021 WL 2400981, at *6 (N.D. Cal. June 11, 2021) (explaining basis for burden).  The fact-finder must also consider Petitioner's financial circumstances for bond and alternative conditions of release.  *See Hernandez*, 872 F.3d at 991.  At any such hearing, Petitioner shall be allowed to have counsel present.  If Petitioner is not found to be a danger to society or flight risk, Respondent must immediately release Petitioner.  Respondent may impose any restrictions or conditions determined to be necessary by the neutral fact-finder at the hearing;

2. Within **eight days** from the date of this Order, Respondent must file a notice of compliance with this Court's Order and, if a bond hearing was held, identify the outcome of the hearing; and

3. If Petitioner is released, Respondent is further ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where Respondent shows material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future.  At any such hearing, Petitioner shall be allowed to have counsel present.

4. The Clerk of the Court is directed to enter judgment in favor of Petitioner and close this case.

//

//

//

9

IT IS SO ORDERED.

Date:  June 05, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

10